# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| PAMELA J. HASSBROCK, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| *versus* § | CIVIL ACTION NO. H-05-2791 |
| § | |
| JO ANNE B. BARNHART, Commissioner § | |
| of the Social Security Administration, § | |
| § | |
| *Defendant.* § | |

## MEMORANDUM AND ORDER

Pending before the Court are Plaintiff Pamela J. Hassbrock ("Hassbrock") and Defendant Jo Anne B. Barnhart's ("Commissioner") cross-motions for summary judgment. Hassbrock appeals the determination of an Administrative Law Judge ("ALJ") that she is subject to a one-third reduction of her Title XVI supplemental security income ("SSI") benefits because she received in-kind support from her family. *See* 42 U.S.C. §§ 416(i), 423, 1382c(a)(3)(A). Having reviewed the pending motions, the submissions of the parties, the pleadings, the administrative record, and the applicable law, this Court is of the opinion that Hassbrock's Motion for Summary Judgment (Docket Entry No. 13) should be granted, the Commissioner's Motion for Summary Judgment (Docket Entry No. 16) should be denied, the Commissioner's decision reducing benefits should be reversed, and the case is remanded, pursuant to sentence four, to the Social Security Administration ("SSA") for further proceedings.

**I.      *Background***

Hassbrock, an adult female, originally applied for SSI benefits in January 1993, claiming disability due to mental retardation; her application was denied by an ALJ on May 17, 1994. (R. 90, 168). In August 1996, Hassbrock applied again for SSI benefits; her application was denied on March 4, 1997. (R. 90). On June 16, 1999, Hassbrock applied again for SSI benefits. (R. 38-40). In a decision dated December 9, 1999, ALJ Philip Kline ("Judge Kline") reopened Hassbrock's prior application (*i.e.*, August 1996), determined that Hassbrock met Listing 12.05C (Mental Retardation), and awarded Hassbrock benefits from August 30, 1996. (R. 90).

On January 4, 2000, counsel for Hassbrock notified the SSA by letter that Hassbrock had lived with her family her entire life because she was not able to support herself and, at least since November 1996, Hassbrock, Francis Locker, Linda Hamby, and David Hamby allegedly had entered into an oral understanding concerning repayment of her expenses. (R. 95-96). The alleged oral loan agreement was reduced to writing on January 4, 2000, and attached to counsel's letter to the SSA. (R. 96). The statement indicated that each of the four persons listed had provided Hassbrock with $50.00 per month in living expenses, toward her $200.00 per month share of food and shelter expenses. The agreement provided that "if and when [Hassbrock] obtains [SSI], she will contribute her share of living expenses in the future and that she will repay them [the four persons listed] for their support since November 1996." (R. 96).

On January 10, 2000, SSA notified Hassbrock that the agreement submitted did not meet Social Security loan agreement policy because it was vague, there was no indicated plan of repayment, and it did not contain an absolute commitment for repayment, but instead was based on the occurrence of an uncertain event. (R. 97). Because Hassbrock received in-kind support (*i.e.*,

unearned income) from her family and no valid loan agreement for in-kind support was deemed to exist, the SSA calculated a one-third reduction of Hassbrock's benefits. (R. 97). Hassbrock received two retroactive payments, each including the one-third reduction: the first retroactive check was issued on January 10, 2000, in the amount of $6,144.00; the second retroactive check was issued on July 2, 2000, in the amount of $6,021.54. (R. 160-161).

On January 12, 2000, Hassbrock notified the SSA of her intention to appeal the decision to reduce her benefits. (R. 98-99). On January 25, 2000, Hassbrock sent a second letter formally requesting reconsideration of the SSA's decision to reduce her SSI benefits. (R. 100). On March 2, 2001, the SSA requested additional information regarding the alleged loan of in-kind support received by Hassbrock. (R. 102). In response, each of the four persons listed in the alleged loan agreement completed a "Statement About Food or Shelter Provided to Another." (R. 104-107). The statements, each dated March 7, 2001, indicated that the parties had each provided Hassbrock with food and shelter. (R. 104-107). Janice Hassbrock's form stated that she had provided Hassbrock with food and shelter of an unspecified amount, since January 14, 2000, and that she and Hassbrock had an agreement that Hassbrock would repay her for the food and shelter provided in the amount of $178.00 per month, with payments beginning on an unspecified date. (R. 104). Francis Locker's form indicated that he had provided food and shelter of an unspecified amount to Hassbrock for an unspecified period of time, to be repaid at $178.00 per month, beginning on an unspecified date. (R. 105). David Hamby's form stated that he provided Hassbrock with food and shelter of an unspecified amount since February 1991, and that Hassbrock would repay him for the support had provided "whenever she can afford to" and for "whatever [amount] she can spare." (R. 106). Linda Hamby's form indicated that she provided Hassbrock with a total of $1,100.00 in food and shelter,

for an unspecified period of time, to be repaid by Hassbrock in the amount of $178.00 per month, with payments to begin on an unspecified date. (R. 107).

On April 21, 2001, the SSA denied Hassbrock's request for reconsideration, finding that no valid loan agreement existed between Hassbrock and her relatives for the in-kind support provided to her by her relatives. (R. 108-110). On April 25, 2001, Hassbrock requested a hearing before an ALJ. (R. 111). A hearing was conducted by ALJ John Martin ("Judge Martin") on July 31, 2002, in Bellaire, Texas, at which time Judge Martin heard testimony from Hassbrock and her sister, Linda Hamby. (R. 194-215). In a decision dated August 22, 2002, Judge Martin determined that Hassbrock received in-kind support from her relatives from November 1996, through August 2000. (R. 151-154). Judge Martin further found Hassbrock's testimony that the in-kind support was a loan was not credible; the in-kind support was not a loan but was income to Hassbrock from her relatives; and Hassbrock's SSI benefits were properly reduced. (R. 153).

On August 28, 2002, Hassbrock appealed Judge Martin's decision to the Appeals Council of the SSA's Office of Hearings and Appeals. (R. 157). The Appeals Council, on May 12, 2004, vacated the decision and remanded for further consideration regarding whether Hassbrock had continued to receive in-kind support and maintenance through the date of the Judge Kline's decision (*i.e.*, December 9, 1999); how Hassbrock spent the retroactive SSI checks; and whether the one-third reduction applies in months after January 2000. (R. 160-161).

A second administrative hearing was conducted by ALJ Thomas Norman ("Judge Norman") in Houston, Texas, on December 2, 2004, at which time Judge Norman heard testimony from Hassbrock. (R. 216-226). In a decision dated February 26, 2005, Judge Norman found that Hassbrock had received in-kind support from her relatives since November 1996; a valid loan

agreement did not exist between Hassbrock and her relatives; and Hassbrock's SSI benefits were being properly reduced. (R. 13-16). On March 11, 2005, Hassbrock appealed the ALJ's decision to the Appeals Council. (R. 9). The Appeals Council, on June 11, 2005, denied Hassbrock's request to review Judge Norman's determination. (R. 4-6). This rendered the Judge Norman's opinion the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Hassbrock filed this case on August 10, 2005, seeking judicial review of the Commissioner's decision. *See* Docket Entry No. 1.

**II.**     *Analysis*

    **A.**     *Statutory Basis for Benefits*

SSI benefits are authorized by Title XVI of the Act and are funded by general tax revenues. *See* SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY HANDBOOK, § 2100 (14th ed. 2001). The SSI Program is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. *See* 20 C.F.R. § 416.110. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).

An SSI recipient is paid a flat monthly benefit, but that monthly benefit is reduced by the amount of non-excludable "income" which the recipient receives. *See* 42 U.S.C. § 1382(b). Under the applicable regulations, loans are not income. *See* 20 C.F.R. § 416.1103(f). For purposes of determining SSI benefits, "income" may include, however, "support and maintenance furnished in cash or in kind." *See* 42 U.S.C. § 1382(a)(2)(A); *see also* 20 C.F.R. §§ 416.1102, 416.1104, 416.1120, 416.1121(h). In this context, "[i]n-kind income is not cash, but is actually food, clothing, or shelter, or something [the recipient] can use to get one of these." 20 C.F.R. § 1102. In-kind

income which is derived from someone else's payment of a recipient's food, clothing, or shelter is also referred to as in-kind support and maintenance. *See* 20 C.F.R. § 416.1130(b).

    **B.**    *Reduction of Disability Benefits*

The fixed amount an SSI recipient receives in benefits is "reduced by the amount of income" to the SSI recipient. *See* 42 U.S.C. § 1382(b)(1). When an SSI recipient lives in the household of another person who provides both food and shelter, in-kind income is valued at one-third of the recipient's federal benefit rate, regardless of its actual value. *See* 20 C.F.R. § 416.1131 (describing the "one-third reduction rule").[1] Thus the SSI recipient is subject to a one-third reduction in SSI benefits. *See* 20 C.F.R. § 416.1131(a)(2). If, however, the support and maintenance received in-kind was a loan, it is not considered income and the one-third reduction does not apply. *See* 20 C.F.R. § 1103(f); *see also Hickman v. Bowen*, 803 F.2d 1377, 1378, 1381-82 (5th Cir. 1986). In order to treat in-kind support and maintenance as a loan, SSI recipients "must show that any in-kind support received was, in fact, loaned to them in realistic anticipation of repayment, and that they indeed intend to repay that debt." *Id*. at 1382.

    **C.**    *Standard of Review*

        **1.**    *Summary Judgment*

The court may grant summary judgment under FED. R. at CIV. P. 56(c) when the moving party is entitled to judgment as a matter of law because there is no genuine issue as to any material

---

[1] In-kind support and maintenance is valued using one of two methods. The "one-third reduction rule," which is set forth, *infra*, is one method; the other method, the "presumed value rule," applies in situations where the recipient does not live in the household of another person who provides both food and shelter. Under the latter method, the SSA presumes that the in-kind income is worth a maximum value which is equal to one-third the recipient's federal benefit rate plus $20. *See* 20 C.F.R. § 416.1140 (describing the "presumed value rule").

fact. The burden of proof, however, rests with the movant to show that there is no evidence to support the nonmoving party's case. If a reasonable jury could return a verdict for the nonmoving party, then a motion for summary judgment cannot be granted because there exists a genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "material" only if its resolution could affect the outcome of the case. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir. 1991). When deciding whether to grant a motion for summary judgment, the court shall draw all justifiable inferences in favor of the nonmoving party, and deny the motion if there is some evidence to support the nonmoving party's position. *See McAllister v. Resolution Trust Corp.*, 201 F.3d 570, 574 (5th Cir. 2000). If there are no issues of material fact, the court shall review any questions of law *de novo*. *See Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Once the movant properly supports the motion, the burden shifts to the nonmoving party, who must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000).

    2.  *<u>Administrative Determination</u>*

Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied to evaluate the evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "Substantial evidence" means that the evidence must be enough to allow a reasonable mind to support the Commissioner's decision; it must be more than a mere scintilla and

less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Masterson*, 309 F.3d at 272; *Brown*, 192 F.3d at 496.

When applying the substantial evidence standard on review, the court "scrutinize[s] the record to determine whether such evidence is present." *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citations omitted). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *See Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. at *See Masterson*, 309 F.3d at 272. In short, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id*.

  **E.** ***Issues Presented***

Hassbrock contends that Judge Norman's finding that no valid loan agreement existed is not based on substantial evidence. Additionally, Hassbrock argues that the evidence is contrary to Judge Norman's findings. *See* Docket Entry No. 13. The Commissioner disagrees with Hassbrock's contentions, maintaining that Judge Norman's decision is supported by substantial evidence. *See* Docket Entry No. 15.

  **F.** ***Review of ALJ's Decision***

In his decision, Judge Norman concludes that the in-kind support that Hassbrock received from her relatives was not a valid loan.

> It is concluded that from November 1996 through December 1999 the claimant had no income and there is no credible evidence of a valid loan of in-kind support and maintenance. The claimant received retroactive payments of $12,165.54 for

> supplemental security income in January and July 2000, yet her testimony regarding how the money was spent was vague, and counsel advised that there was no written documentation of how the retroactive payments were spent. It is concluded that a bona fide loan did not exist. The claimant did not present any evidence that since January 2000 she has paid at least a pro rata share of household and operating expenses.

(R. 16). Thus, Judge Norman found that for the period between November 1996 (*i.e.*, the beginning date of retroactive benefits) to December 1999 (*i.e.*, the date Hassbrock first received retroactive benefits) she could not have made a valid loan agreement because she had no income. Moreover, he found that for the period *after* she had received the money, that her testimony was vague as to how she spent it and that she had not presented any evidence that she had paid her share of living expenses since January 2000. (R. 14-16).

Judge Norman's findings are contrary to the evidence of record. Hassbrock acknowledged her debt to her supporters. (R. 96). Hassbrock testified that she repaid her brother-in-law and others for the support that they had provided her while her SSI case was pending. (R. 220-222, 223-225). When asked about the January 4, 2000, statement she signed regarding her intent to repay her debt to her relatives, Hassbrock testified:

> A: Yeah, and I had borrowed money from them, and then until I could get on my feet or get some kind of help to where I could pay them back.
> Q: Okay. So is that – was that a true statement at the time that you made it?
> A: Yes, it was.
> Q: Is it still a true statement today?
> A: Yes, it is. Because I've been giving up my whole check after my mom passed away even to live.
> \* \* \*
> Q: Okay. You did get some back pay at one point in time, didn't you? Back some years ago?
> A: And most of that went to my mother before she passed away.
> Q: So you actually repaid –
> A: My mother, and I paid David, and I paid Linda what I owed them just so I can have an eased conscience where I don't owe nobody nothing.

9

\* \* \*

Q: Okay. What about now back – I mean, what about your relatives? Like, before she died, your mother, and your sister, and your brother-in-law, and so forth? Did you –
A: I paid them all back, but they didn't give me no written receipts or nothing.
Q: Did you pay them in cash?
A: Yes.
Q: You did, okay. Prior to that they were – I mean, prior to your getting the SSI checks, they were making all of the bills, were they not?
A: Yes.
Q: You didn't – did you have any income at all?
A: Not at the time until I started getting –
Q: Not until you started getting your SSI?
A: Right.
Q: Okay.
A: Basically, they were helping me out until I could get on my feet. And when they started helping me with the SSI, I'd try to help them slowly to just get out of debt just to - -

(R. 221, 223, 224-225). Hassbrock also stated that since January 2000 (when she first began to receive SSI benefits) she had been paying her share or more of the household expenses. (R. 221-223).

Q: Has your rent gone up since back in 2000?
A: Yes. Right now I'm paying $370. $300 for rent.
Q: How much are you getting all together from SSI?
A: $376.
Q: At this point in time?
A: At this point in time.
Q: And well, how much do you contribute toward the rent?
A: 300. And the rest of it goes –
Q: Okay. Contribute some toward the groceries?
A: – lights, the water, and part of it on groceries.

(R. 221).

The ALJ's reasoning that Hassbrock could not have made a valid loan without having any income (R. 16, 223-224), has been rejected by the Fifth Circuit. *See Hickman*, 803 F.2d at 1381-82. As in *Hickman*, here, the "evidence so far produced in this case does not provide an answer to

10

whether the in-kind support [plaintiff] received from her mother was, in fact, a loan." The Commissioner's contention that "no bona fide loan" existed is based entirely on the Programs Operation Manual System ("POMS"). The Commissioner made a similar argument, based on POMS, in *Hickman*. In this regard, the Fifth Circuit noted:

> However, although the POMS may provide us with some useful insights, it has no legal force and does not bind the courts. *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981). As a handbook representing internal policy, the POMS cannot answer the question before us, it simply informs us of present operating procedures of [SSA] employees.

*See Hickman*, 803 F.2d at 1381. Because the ALJ's decision is based on his finding that Hassbrock had no income until her SSI checks began, the ALJ concluded that "there was no credible evidence of a valid loan of in-kind support and maintenance." (R. 16, 223-224). As set forth above, this same reasoning was expressly rejected by *Hickman*. *See* 803 F.2d at 1381-82.

Because the central issue is in this case, *i.e.*, whether the support and maintenance received both prior to receiving benefits (November 1996 through December 1999) and after receiving benefits (post-January 2000) was gratuitous or a loan has not been properly analyzed, this case must be remanded for further development, both legally and factually, in this regard.

**III.**     *Conclusion*

Accordingly, it is therefore

**ORDERED** that Hassbrock's Motion for Summary Judgment (Docket Entry No. 13) is **GRANTED**. It is further

**ORDERED** that the Commissioner's Motion for Summary Judgment (Docket Entry No. 16) is **DENIED**. It finally

**ORDERED** that the case is **REVERSED** and **REMANDED** to the Commissioner, pursuant to "sentence four" of the Social Security Act, 42 U.S.C. § 405(g), for a new hearing to fully evaluate evidence from Hassbrock and/or her supporters and to apply the proper legal principles in making decisions as to whether Hassbrock's SSI benefits should be subjected to a one-third reduction for receiving in-kind support from her relatives prior to being awarded benefits (*i.e.*, November 1996-December 1999) and after receiving benefits (*i.e.*, post-January 2000).

**SIGNED** at Houston, Texas on this 29th day of September, 2006.

Calvin Botley
United States Magistrate Judge